[Cite as *State v. Cole*, 2015-Ohio-5295.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26576 |
| | : | |
| v. | : | T.C. NO.   14CR911/1 |
| | : | |
| TIFFANY COLE | : | (Criminal Appeal from |
| | : |   Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___18th___ day of ___December___, 2015.

. . . . . . . . . . .

DYLAN SMEARCHECK, Atty. Reg. No. 0085249, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MICHAEL B. MILLER, Atty. Reg. No. 0079305, 2233 Miamisburg Centerville Rd., Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, P.J.

{¶ 1}  Tiffany Cole appeals from a judgment of the Montgomery County Court of Common Pleas, which found her guilty on her no contest plea of having weapons while under disability.  The trial court had previously overruled Cole's motion to suppress evidence that law enforcement officers found when they searched a hotel room.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3} The State's evidence at the suppression hearing established the following:

{¶ 4} On the morning of November 1, 2013, as part of regular efforts to monitor "high-level" drug activity at hotels along Interstate 75, Deputy Josh Walters of the Montgomery County Sheriff's Department and Special Narcotics Agent Robert Marchiny of the Bureau of Criminal Investigations were conducting surveillance at the Hawthorn Suites hotel on Prestige Place in Miamisburg. Their surveillance began at approximately 9:30 a.m. A short time later, they observed a white Chevy Malibu with darkly-tinted windows drive around the hotel parking lot and then park in an adjoining Dayco lot. The driver, later identified as Glenn Hayes, sat in his vehicle for a while, then removed a backpack from his trunk, walked across the parking lot, and entered a room of the hotel. The officers thought Hayes's decision to park in the adjoining lot was suspicious, because plenty of parking was available in the hotel lot.

{¶ 5} Shortly thereafter, the officers observed individuals later identified as Hayes and Cole move from the hotel room Hayes had first entered to another hotel room, carrying black trash bags. Again, the officers viewed this behavior with suspicion. They testified that drug dealers often move from room to room to avoid attracting attention because of a lot of traffic to one particular room. The officers checked with hotel management about the registration for the two rooms. The second room, Room 612, was registered to Cole; neither room was registered to Hayes.

{¶ 6} Around noon, Hayes and Cole left the hotel in the white Malibu. Deputy Walters requested that the car be stopped by other deputies for a traffic stop. Deputy Gust Teague initiated a traffic stop for a window tint violation. When Teague approached

the vehicle, he smelled a "strong odor of burnt marijuana" coming from the rolled-down window and called for a canine unit. The officers from the hotel also drove to the location of the stop. The canine unit responded within three to four minutes, and the dog alerted on the vehicle. In the subsequent search, no burnt marijuana was found, but "minor bits of shake of marijuana" were found throughout the car.

{¶ 7} After watching the traffic stop from a distance for a short time, Deputy Marchiny approached, introduced himself to Cole, explained "who [he] represented" and "what items [he was] looking for, what [his] job was." Marchiny testified that Cole was "very cooperative." He asked Cole if she had any "smuggling type of items, large amount of narcotics, things of that nature" in her hotel room and whether she would consent to a search of the room. She agreed, and Deputies Marchiny and Walters returned to the hotel with Cole.

{¶ 8} As they approached hotel room 612 (the room registered to Cole), Cole informed the deputies that there was a gun in the room. Cole stated that the gun did not belong to her, but she knew it was there. She described its location as on a shelf in a cabinet. The officers cleared the room and found the gun where Cole had described. They also found cocaine and a scale in the bag that Hayes had carried from the car to the room.

{¶ 9} On June 11, 2014, Cole was indicted on one count of having weapons while under disability. Cole filed a motion to suppress, arguing that the officers did not have a reasonable, articulable suspicion of criminal activity when they stopped the car and that they engaged in a "fishing expedition" when they took her back to the hotel. The trial court overruled the motion. In January 2015, Cole entered a no contest plea to having

weapons while under disability; she was convicted and sentenced to 30 months in prison.

{¶ 10} Cole appeals, raising four assignments of error.   Her first two assignments of error state:

> **The traffic stop lacked sufficient probable cause because there was insufficient evidence of a window tint violation and any probable cause grounds were stale by the time the stop occurred.**

> **The trial court erred in denying Appellant's motion to suppress because law enforcement lacked probable cause to detain the Appellant for the period of time she was detained by the time consent to search was obtained.**

{¶ 11}  Cole argues that the deputies lacked probable cause for a window-tint violation and therefore also lacked probable cause to stop the vehicle in which she was a passenger.   In the alternative, she argues that, even if the deputies had probable cause at the outset of the encounter, it was "stale" by the time they stopped the car.   She contends that the deputies "elongated" her detention in their "fishing expedition" for evidence of drug activity.

{¶ 12} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *State v. Martin,* 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry; State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204,

¶ 7-8. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 13} " 'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears,* 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, citing *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Scott*, 2d Dist. Clark No. 2013 CA 104, 2014-Ohio-4963, ¶ 12.

{¶ 14} At a hearing on a motion to suppress evidence, the trial court, as trier of fact, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Drumm*, 2015-Ohio-2176, 36 N.E.3d 769, ¶ 9 (2d Dist.), citing *State v. Hopfer,* 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996). While an appellate court must accept any findings of fact by the trial court which are supported by competent, credible evidence, it does not defer to the trial court on questions of law. *Id.*, citing *State v. Curry,* 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

{¶ 15} Cole contends that the trial court erred in concluding that the officers had probable cause for the traffic stop. However, probable cause was not required. We will examine whether the officers had a reasonable, articulable suspicion which justified the traffic stop.

{¶ 16} We have repeatedly held that a traffic stop for a suspected window-tint violation is lawful. *See, e.g., Scott,* 2d Dist. Clark No. 2013 CA 104, 2014-Ohio-4963, at

¶ 12*; State v. Carson,* 2d Dist Montgomery No. 26505, 2015-Ohio-4110; *State v. Dudley*, 2d Dist. Montgomery No. 24904, 2012-Ohio-960, citing *State v. Taylor*, 114 Ohio App.3d 416, 683 N.E.2d 367 (2d Dist.1996).

{¶ 17} At the suppression hearing in Cole's case, Deputy Teague, who effectuated the traffic stop, testified that he could not see inside the Chevy Malibu "at all," although it was around noon on a sunny day. Deputies Walters and Marchiny also testified to the dark window tint on the vehicle. On cross-examination, Cole elicited testimony from the deputies that the tinting on the window had never been tested, that no citation had been issued for that offense, and that the tint had been the "pretext" Deputy Teague had been looking for to justify the traffic stop. However, whether pretextual or not, it is well established that a traffic violation, including a tint violation, gives an officer a reasonable articulable suspicion justifying a traffic stop. *See State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 20; *State v. Wilcox*, 177 Ohio App.3d 609, 2008-Ohio-3856, 895 N.E.2d 597, ¶ 13. Cole did not present any evidence to contradict the officers' testimony that the car's windows were darkly tinted. The trial court reasonably concluded that the traffic stop was not unconstitutional.

{¶ 18} Cole also argues that the tint violation was "stale" by the time of the traffic stop, because the deputies did not act immediately upon noticing the tint violation. Cole has cited no authority, and we are aware of none, for her suggestion that a law enforcement officer must immediately act upon any observed traffic offense or that, in failing to immediately act, an officer waives his or her authority to later effectuate such a stop.

{¶ 19} Cole also argues that Deputy Teague "elongated" the traffic stop beyond a

reasonable time to investigate the tint violation when he called the canine unit.

{¶ 20} The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop and issue a traffic citation, absent specific and articulable facts that demonstrate a reasonable suspicion of criminal activity, other than the traffic violation, that justifies continued detention. *State v. Ramos,* 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523 (2d Dist.); *State v. Dewitt*, 2d Dist. Montgomery No. 23735, 2010-Ohio-6476, ¶ 41. After the reasonable period of time for issuing the traffic citation has passed, an officer must have a reasonable articulable suspicion of illegal activity to continue the detention. *Ramos* at ¶ 13.

{¶ 21} "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." *Id.*, quoting *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997), paragraph one of the syllabus. When a canine drug search is involved, the police must have a reasonable suspicion that a vehicle contains drugs in order to detain a suspect further while a drug-sniffing canine is brought to the scene. *Id.*, citing *Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047.

{¶ 22} Deputy Teague testified that he smelled a "strong odor of burnt marijuana" when he approached the vehicle and Hayes rolled down the driver's window. Teague promptly requested a canine unit, and it arrived within three to four minutes. We have held that 20 minutes is a reasonable period of time for processing and issuing a traffic

citation for a window tint violation and that a dog sniff that occurs within this window of time generally will not constitute an unlawful lengthening of the traffic stop. *State v. Wilcox*, 2d Dist. Clark No. 2013-CA-94, 2014-Ohio-4954, ¶ 12. Cole questions the truthfulness of the testimony concerning the window tint and the odor of marijuana, but this was a credibility issue for the trial court. Under the circumstances presented here, the trial court could have reasonably concluded that the request for a canine unit did not extend the traffic stop beyond the time necessary to investigate the tint violation, check identification, and issue a citation (if Teague had chosen to do so). Moreover, once Teague had approached the vehicle and smelled marijuana, he had a reasonable, articulable suspicion justifying further investigation.

{¶ 23} At oral argument, Cole's attorney emphasized that the traffic stop was unlawfully extended to question Cole about the events observed at the hotel and possible contraband at the hotel, and thus any consent obtained during this extension poisoned the subsequent seizure of the weapon.

{¶ 24} The precise timeline of the events is not clear from the record. Cole and Hayes left the hotel in the car around noon, and they were stopped a short time later. According to Deputy Walters, the deputies returned to the hotel with Cole within approximately 30 minutes of the traffic stop. They approached the room, at which time Cole told them of the presence of a gun in the room. The deputies informed Cole of her rights and entered and cleared the room before having Cole execute a consent to search. Cole signed the consent form in the hotel room at 12:50. Cole's argument that the deputies' questions about her activities at the hotel and her willingness to consent to the search of the room unlawfully extended the traffic stop relies heavily on the time at which

the consent to search was executed, approximately 45 or 50 minutes after the traffic stop; it also requires an inference that the questioning of Cole and the search of the car by the canine and then by police officers did not occur simultaneously.

{¶ 25} Notwithstanding the time on the written consent to search, the record supports a conclusion that Cole originally consented to the search at the location of, and within a reasonable time of, the traffic stop, and that she willingly returned to the hotel with the deputies; once she consented, she was no longer detained pursuant to the traffic stop. The evidence presented does not compel the conclusion that the questioning of Cole unlawfully extended the traffic stop.

{¶ 26} Further, Deputy Marchiny testified that Cole was not under arrest or handcuffed when she was asked to consent to the search, that she did not appear to be under the influence of alcohol or drugs, that he and Deputy Walters discussed the consent to search form with her, and that she understood the nature of her consent. They had discussed searching her room for "smuggling type of items"; it is unclear whether weapons, in particular, had been mentioned. Walters and Marchiny testified that Cole had volunteered the information that there was a gun in the hotel room, without any questioning on their part, before they entered the room. The trial court reasonably concluded that Cole's consent to the search had been knowingly, voluntarily, and intelligently made.

{¶ 27} The trial court did not err or abuse its discretion in overruling Cole's motion to suppress.

{¶ 28} The first and second assignments of error are overruled.

{¶ 29} Cole's third and fourth assignments of error challenge the sufficiency and

weight of the evidence in support of her conviction. She contends that it was "not reasonable to conclude" that Hayes possessed the cocaine and scales found in the hotel room, but that she possessed the gun; she also contends that there was no physical evidence linking her to the gun and no evidence of its operability.

{¶ 30} An argument based on the sufficiency of the evidence challenges whether the State has presented adequate evidence on each element of the offense to allow the case to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In contrast, when reviewing an argument challenging the weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 31} A conviction following a no contest plea does not derive from evidence adduced at trial, but from the no contest plea itself, which is an admission of the truth of the facts alleged in the indictment. *State v. Hall*, 2d Dist. Montgomery No. 23488, 2009-Ohio-6390, ¶ 27, citing Crim.R. 11(B)(2). "Therefore, a conviction based upon a no-contest plea is not amenable to review on appeal to see whether it is against the manifest weight of the evidence." *Id.*, citing *State v. McGhee*, 2d Dist. Montgomery No. 14515,

1995 WL 19111 (Jan. 18, 1995).

{¶ 32} With respect to the sufficiency of the evidence, a no contest plea is an admission to the facts as laid out at the plea hearing; the trial court retains discretion to consider a defendant's contention that the admitted facts do not constitute the charged offense, but the defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense. *State v. Erskine,* 2015-Ohio-710, 29 N.E.3d 272, ¶ 18 (4th Dist.), citing *State ex rel. Stern v. Mascio,* 75 Ohio St.3d 422, 424, 662 N.E.2d 370 (1996).

{¶ 33} In Cole's case, the prosecutor's statement of the facts at the plea hearing was as follows:

* * * [T]he State charged in Count I of the indictment that Tiffany Cole, on or about November 1, 2013, in the County of Montgomery, in the State of Ohio, did knowingly acquire, have, carry, or use, any firearm or dangerous ordinance, while [she] was under indictment for a felony of violence.

And the defendant knew she * * * was under indictment for a felony of violence, or was reckless in that regard, or having previously been convicted of a felony of violence * * *.

The State identified Cole's previous conviction as a 2004 burglary, Montgomery C.P. No. 2003-CR-4454.

{¶ 34} Although Cole argues in her brief that the gun more logically or more likely belonged to Hayes because he possessed the cocaine and scales, that there was no physical evidence linking her to the gun, and no evidence of its operability, she admitted

in her no contest plea that she had acquired or had a firearm. Moreover, more than one person may be found to have had actual and/or constructive possession of an item. *See State v. Barber*, 10th Dist. Franklin No. 14AP-557, 2015-Ohio-2653, ¶ 21; *State v. Granados*, 5th Dist. Fairfield No. 13-CA-50, 2014-Ohio-1758, ¶ 25.

**{¶ 35}** Further, the statutory definition of a firearm is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," and it includes an unloaded firearm and any firearm that is inoperable but that can readily be rendered operable. R.C. 2923.11(B)(1). Because Cole pled no contest to acquiring or having "any firearm" or deadly ordnance, and the definition of a firearm presumes its operability, the State was not required to offer any additional evidence of the operability of the weapon to sustain her conviction.

**{¶ 36}** Cole's third and fourth assignments of error are overruled.

**{¶ 37}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Dylan Smearcheck
Michael B. Miller
Hon. Mary Katherine Huffman