[Cite as *State v. Curley*, 2016-Ohio-7624.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
        Plaintiff-Appellee             :      C.A. CASE NO.   27104
                                       :
v.                                     :      T.C. NO. 15CRB1938 and
                                       :      15TRC7526A-C
TYLER CURLEY                           :
                                       :
        Defendant-Appellant            :      (Criminal Appeal from
                                       :       Municipal Court)
                                       :

        . . . . . . . . . . .

**O P I N I O N**

Rendered on the ___4th___ day of _____November_____, 2016.

        . . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, Prosecuting Attorney, City of Kettering, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Plaintiff-Appellee

JEFFREY E. RICHARDS, Atty. Reg. No. 0016610, 147 Miami Street, P. O. Box 536, Waynesville, Ohio 45068
        Attorney for Defendant-Appellant

        . . . . . . . . . . . .

FROELICH, J.

        {¶ 1} Tyler Curley appeals from two judgments of the Kettering Municipal Court, which found him guilty of several offenses on his no contest pleas after overruling his motion to suppress evidence.   Curley was convicted of operating a motor vehicle while intoxicated (OVI) (second offense), in violation of R.C. 4511.19(A)(1), refusal to submit to

a chemical test with a prior OVI conviction within 20 years, in violation of R.C. 4511.19(A)(2), failure to have his rear license plate illuminated, in violation of Kettering Ordinance 438.04(b), possession of marijuana (less than 100g), and possession of drug paraphernalia. On appeal, Curley challenges the denial of his motion to suppress.

{¶ 2} For the following reasons, the judgments of the trial court will be affirmed.

### I. Facts and Procedural History

{¶ 3} Curley was stopped by uniformed Kettering Police Officer Jonathon McCoy on October 2, 2015, at 2:49 a.m., in the vicinity of Dorothy Lane and Galewood Street. McCoy had driven past Curley's vehicle on Dorothy Lane as they traveled in opposite directions. Upon looking in his rearview and side mirrors, McCoy believed that Curley's rear license plate was not properly illuminated, and McCoy turned his cruiser around to investigate. McCoy got behind Curley's vehicle and turned off his own headlights; he again concluded that Curley's license plate was not sufficiently illuminated, and he initiated a traffic stop.

{¶ 4} When McCoy approached Curley's vehicle on foot and examined the area around the license plate, he observed that one light bulb above the license plate was on, but it was dim and was not illuminating the plate. A second license plate light was not working at all.

{¶ 5} McCoy detected a strong odor of burnt marijuana coming from the vehicle, and Curley admitted smoking marijuana and "drinking" one hour earlier. McCoy observed that Curley's eyes were "bloodshot" and "glassy," and his speech was "slurred." Curley submitted to and failed unspecified field sobriety tests. He refused to submit to a chemical test. He was charged with the offenses listed above.

**{¶ 6}** On November 6, 2015, Curley filed a motion to suppress "all evidence of the field sobriety tests," on the grounds that they were not properly administered. The trial court conducted a hearing on the motion on February 1, 2016. Although the motion to suppress indicated an intent to challenge the manner in which the field sobriety tests were performed, the hearing itself focused on whether McCoy had reasonable suspicion to stop Curley's vehicle. On February 8, 2016, the trial court overruled the motion to suppress.

**{¶ 7}** After the ruling on the motion to suppress, Curley entered no contest pleas on all of the charges against him. On the OVI and OVI refusal, he was sentenced to 180 days in jail, with 170 and 160 days suspended, respectively; he was fined $1,000 for each offense, with $400 suspended on each count. Curley was placed on supervised probation for four years, and his operator's license was suspended for two years. Additionally, Curley was fined $25 each for possession of marijuana and possession of drug paraphernalia and was fined $10 on the license plate light violation.

**{¶ 8}** Curley raises one assignment of error on appeal, which challenges the trial court's decision on his motion to suppress based on the sufficiency and manifest weight of the evidence.

## II. Standard of Review

**{¶ 9}** In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford,* 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley,* 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford*

at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 10} Curley frames his argument in terms of the sufficiency and weight of the evidence, but these standards apply to our review of a court's final judgment, not its interlocutory orders, such as a decision on a motion to suppress. We will review whether the trial court's factual findings are supported by competent, credible evidence, *id.*, and whether the trial court erred in overruling the motion to suppress.

### III. The Justification for the Traffic Stop

{¶ 11} A law enforcement officer may lawfully stop a vehicle if the officer has a reasonable, articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8; *State v. Hardy,* 2d Dist. Montgomery No. 24114, 2011-Ohio-241, ¶ 20. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances and considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Hardy* at ¶ 20, citing *State v. Heard,* 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14. Whether the officer's suspicion of criminal activity was reasonable is not dependent on whether any occupant of the vehicle is charged or found guilty of the suspected activity. *See State v. Eggleston*, 2015-Ohio-958, 29 N.E.3d 23, ¶ 29 (11th Dist.); *State v. Pfeiffer*, 12th Dist. Butler No. CA2003-12-329, 2004-Ohio-4981, ¶ 26. The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop and issue a traffic citation, except that continued detention is justified if the

officer becomes aware of additional specific and articulable facts that demonstrate a reasonable suspicion of criminal activity other than the traffic violation. *State v. Ramos,* 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.); *State v. Cole,* 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 20; *State v. Dewitt,* 2d Dist. Montgomery No. 23735, 2010-Ohio-6476, ¶ 41.

{¶ 12} City of Kettering Code 438.04(b), which is identical in all substantive respects to R.C. 4513.05(A), requires illumination of the rear registration plate of every motor vehicle:

(b) Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear. Any tail light, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted, except where separate lighting systems are provided for trailers for the purpose of illuminating such registration plate.

{¶ 13} At the suppression hearing, McCoy testified that he looked at Curley's vehicle using his rear and side mirrors after passing Curley's car (in the opposite direction) on Dorothy Lane; McCoy was not able to read Curley's rear license plate or even see if a license plate was present. He also testified that, after turning around to follow Curley and turning off the cruiser's headlights, he could not see the rear license plate at a distance of less than 50 feet. McCoy described 50 feet as "five stories" and stated that he had "paced [him]self about a half block behind" the vehicle. No testimony was offered

about the size of the blocks in that area. McCoy also testified that he followed the vehicle about three-quarters of a mile before making the traffic stop, and that he did not have to "catch up" to Curley to make the traffic stop; "I was already behind his vehicle."

{¶ 14} McCoy further testified that when he approached Curley's stopped vehicle on foot, he was "unable to read the license plate in the dark." He noticed that there was one "dim" bulb illuminated above the rear license plate, but it was so dim that it was "not projecting any light onto the license plate." He compared the illumination from this light to "the flicker of a candle." On closer examination, McCoy also noticed that there was a second bulb above the license plate, which was not operational at all.

{¶ 15} Curley presented testimony from his step-father, John Szanto, at the suppression hearing. Szanto was not present at the time of the traffic stop, but he took photographs of Curley's vehicle approximately one month later, at night and at a different location. These photographs were offered into evidence to demonstrate the legibility of the license plate at night.

{¶ 16} Curley also testified at the hearing. He stated that there had been no changes to the "lighting system" between the time of the traffic stop and the time Szanto took his photographs.

{¶ 17} The trial court "did not find anything in the photographs or the Defense testimony which detracts from the credibility of [Officer] McCoy's testimony." The court found that the appearance of the rear license plate at a different place and time did not contradict McCoy's testimony as to what he observed on Dorothy Lane on the night of the traffic stop. The court noted that Curley "did not offer any testimony on the visibility of the plate on 2 Oct 2015." The court concluded that McCoy had pointed to "specific and

articulable facts" which, considered with rational inferences from those facts, "reasonably warranted [Officer] McCoy in making a traffic stop" on the night in question.

{¶ 18} Curley argues that there was insufficient evidence that his license plate was "unreadable" at a distance of 50 feet or less. He challenges the accuracy or plausibility of McCoy's estimation at the hearing that 50 feet is approximately "half a block" and of McCoy's description of the distance and manner in which he (McCoy) turned around on Dorothy Lane and followed Curley's vehicle to close within 50 feet. Curley's brief also contains many purported measurements (for example, the length of a block, the number of houses on a block, the length of a police cruiser, and number of car lengths McCoy must have been behind Curley's car, and the speed at which McCoy must have been traveling); Curley relies on these suggested measurements, as well as his own testimony and the testimony of "an acquaintance" (presumably (Szanto) that the license plate could be read at 50 feet in concluding that the State's evidence was "nonsensical" and unreliable. At oral argument, Curley's attorney also argued that a court must use "common sense" in interpreting the evidence presented, and that the court could not have reasonably credited McCoy's testimony equating half a block with 50 feet.

{¶ 19} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford,* 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley,* 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. Moreover, when reviewing suppression rulings, we consider only the evidence

before the trial court at the suppression hearing; we cannot consider any evidence outside the record of the suppression hearing. *State v. Harris*, 2d Dist. Montgomery No. 26810, 2016-Ohio-7097, ¶ 3.

{¶ 20} The trial court reasonably concluded that the photographs demonstrating illumination of the license plate – which were taken at night but at a different time and place than the traffic stop – did not refute McCoy's testimony that, at the time of the traffic stop, Curley's license plate was not "legible" due to inadequate lighting. Further, the court was not required to credit Curley's testimony that no modifications to the lighting system had been made during the intervening weeks. We cannot conclude that the trial court erred in crediting McCoy's testimony when it weighed the conflicting testimony about the visibility of the license plate.

{¶ 21} At oral argument, Curley's attorney also argued, for the first time, that 1) the statute did not require that the rear license plate be illuminated by the vehicle on which it was mounted (rather, that it was sufficient that it be legible when the headlights from another vehicle shined upon it); and 2) that the last paragraph of the Kettering ordinance differs from R.C. 4513.05 and creates some ambiguity about when or whether rear plate lighting was required on Curley's vehicle.

{¶ 22} The ordinance at issue clearly requires that the rear registration plate be lighted by a white light "placed as to illuminate" that plate and render it legible; this requirement cannot reasonably be interpreted to permit illumination from the headlights of a separate vehicle, as Curley suggests. *See U.S. v. Pate*, S.D.Ohio No. 1:09-CR-18, 2009 WL 3418664 (Oct. 19, 2009) (interpreting R.C. 4513.05); *see also State v. Held*, 146 Ohio App.3d 365, 766 N.E.2d 201 (11th Dist. 2001) (rejecting trial court's view that it

was no longer reasonable to issue a citation for a violation of R.C. 4513.05, in light of requirement that Ohio license plates now use reflective paint, and further holding that having an operable light where the license plate normally would be affixed is of no avail if the license plate was not in that spot to receive the illumination). Moreover, the last sentence of Kettering Ordinance 438.04 is not different from R.C. 4513.05, nor does it create any ambiguity about the lighting requirement for a vehicle, like Curley's, that is not pulling a trailer.

{¶ 23} The trial court's decision that McCoy had reasonable, articulable suspicion for the traffic stop was supported by competent, credible evidence, and we find no basis to reverse it.

{¶ 24} The assignment of error is overruled.

### IV. Conclusion

{¶ 25} The judgments of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and WELBAUM, J., concur.


Copies mailed to:

John D. Everett
Jeffrey E. Richards
Hon. James F. Long