[Cite as *State v. Davenport*, 2017-Ohio-688.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NOS. 27096 and 27097 |
| | : | |
| v. | : | T.C. NOS. 14CR4132 and 14CR3102 |
| | : | |
| DARRYL C. DAVENPORT, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____24th____ day of _____February_____, 2017.

. . . . . . . . . .

HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

THOMAS W. KIDD, JR., Atty. Reg. No. 0066359, P. O. Box 231, Harveysburg, Ohio 45032
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Darryl Davenport appeals his conviction and sentence in Case No. 2014 CR 4132 for one count of possession of heroin (100 unit doses but less than 500 unit doses), in violation of R.C. 2925.11(A), a felony of the second degree. Davenport also appeals his conviction in Case No. 2014 CR 3102 for one count of having

weapons under disability (prior drug conviction), in violation of R.C. 2923.13(A)(3), a felony of the third degree.[1]  Davenport filed a timely notice of appeal with this Court in both cases on April 27, 2016.

{¶ 2} The incident which forms the basis for the instant appeal with respect to Case No. 2014 CR 1432 occurred at approximately 4:25 p.m. on June 19, 2014, when Sergeant Kevin Landis of the Miami Township Police Department was assigned to patrol in and around the Barclay Square Condominiums located in Montgomery County, Ohio.  While patrolling the area, Sgt. Landis observed a maroon GMC SUV with "very dark tinted windows" being driven near the condos.  Sgt. Landis testified that the tint was so dark that he was unable to discern how many occupants were inside the vehicle.  Believing he had observed a window tint violation, Sgt. Landis initiated a traffic stop of the vehicle in the parking lot of a nearby Speedway Gas Station.

{¶ 3} After stopping the vehicle, Sgt. Landis exited his cruiser and approached the car on the driver's side.  The driver, later identified as Davenport, rolled down the window and greeted Sgt. Landis.  Sgt. Landis testified that he immediately detected the faint odor of burnt marijuana and the strong odor of air freshener emanating from the interior of the vehicle.  Sgt. Landis further testified that he observed that Davenport was the sole occupant of the vehicle.  Sgt. Landis asked Davenport for his driver's license. Davenport stated that he did not have any identification with him, but he provided Sgt. Landis with his personal information.  At that point, Sgt. Landis asked Davenport to step

---

[1] Although there is no assignment of error relating to his conviction and sentence in Case No. 2014 CR 3102, Davenport received an appeal bond on both cases from the trial court. Therefore, we consolidated Case Nos. 2014 CR 3102 and 2014 CR 4132 for purposes of the instant appeal.  Accordingly, we need not address the underlying facts in Case No. 2014 CR 3102 as they are not at issue here.

out of the vehicle. Davenport complied, and Sgt. Landis placed him in the back of the police cruiser. Sgt. Landis did not handcuff Davenport. Upon confirming his identity using Justice Web, Sgt. Landis discovered that Davenport did not possess a valid driver's license, nor had he possessed a valid license for several years. Davenport stated the vehicle he was driving belonged to his sister, and she let him drive it even though she was aware that he did not possess a valid license.

{¶ 4} Sgt. Landis testified that pursuant to the Miami Township Police Department tow policy, he was required to perform an inventory search of the vehicle. Sgt. Landis also testified that based on the faint smell of marijuana he detected and Davenport's lack of a valid license, he had probable cause to search the vehicle. Nevertheless, during the subsequent inventory search of the vehicle, Sgt. Landis testified that he observed that the cup holder in the center console appeared to have been tampered with. Specifically, Sgt. Landis testified as follows:

> The State: Okay. And how – what drew your attention to that cup holder in the first place?

> Sgt. Landis: All the – like the debris and dirt and such that gets down in the crevice where the cup holder snaps in, typically it's been my experience on a car where the cup holder doesn't get moved around it's well down into the crack. In this case all the material around there was obviously disturbed. It wasn't down in the crack, it was up higher and it didn't look old the way it typically would. Like they – it had been turned. Typically a cup holder doesn't just pull right out. They're hooked down in there. And when I noticed the disturbance I just pulled it up and it just came

right out.

{¶ 5} Under the cup holder he had just removed, Sgt. Landis discovered a baggie containing what he believed to a large amount of heroin capsules. Upon further investigation, the baggie was found to contain 311 heroin capsules. Sgt. Landis testified that in his experience, people sometimes keep items in the cup holder in their vehicles to hide them from the view of others.

{¶ 6} After finding the heroin capsules, Sgt. Landis *Mirandized* Davenport. After being *Mirandized*, Davenport indicated to Sgt. Landis that he was willing to answer questions without an attorney present. Sgt. Landis testified that Davenport stated that he had no knowledge of the drugs found in the vehicle and that "a lot of people drive the vehicle." At some point during the traffic stop, Davenport's sister arrived at the scene and admitted to Sgt. Landis that she was aware that Davenport did not have a license but she let him drive her vehicle anyway. Thereafter, Sgt. Landis had the vehicle towed. Sgt. Landis cited Davenport for failure to reinstate his driver's license, and he cited Davenport's sister for negligent entrustment. Sgt. Landis then released Davenport.

{¶ 7} On January 14, 2015, Davenport was indicted in Case No. 2014 CR 4132 for one count of possession of heroin (100 unit doses but less than 500 unit doses), in violation of R.C. 2925.11(A), a felony of the second degree. At his arraignment on January 23, 2015, Davenport stood mute, and the trial court entered a plea of not guilty on his behalf. After retaining private counsel to represent him, Davenport posted bond in the amount of $25,000.00 and was released on his own recognizance. On April 16, 2015, Davenport filed a motion to suppress any physical evidence from the vehicle and/or statements made by Davenport during the traffic stop on June 19, 2014. A hearing was

held on said motion on August 6, 2015. On September 17, 2015, the trial court issued a decision overruling Davenport's motion to suppress.

{¶ 8} On February 24, 2016, Davenport pled no contest in Case No. 2014 CR 4132 to one count of possession of heroin. At the same hearing, Davenport also pled no contest in Case No. 2014 CR 3102 for one count of having weapons under disability. The trial court also instructed the probation department to complete a presentence investigation report (PSI) for review prior to sentencing.

{¶ 9} At his sentencing hearing on March 28, 2016, the trial court sentenced Davenport to a mandatory term of three years in prison in Case No. 2014 CR 4132 for possession of heroin. The trial court also sentenced Davenport to eighteen months in prison in Case No. 2014 CR 3102 for having weapons under disability, ordering both sentences to be served concurrently for an aggregate sentence of three years in prison. The trial court also imposed a one-year driver's license suspension upon Davenport and ordered him to pay a mandatory fine of $7,500.00. The record establishes that Davenport filed an affidavit of indigency on the same day he was sentenced. The time stamp on the affidavit indicates that it was filed at 10:31 a.m., almost contemporaneously with the beginning of the sentencing hearing which started at 10:29 a.m. We further note that upon a motion from Davenport, the trial court stayed imposition of sentence pending the outcome of the instant appeal.

{¶ 10} It is from this judgment that Davenport now appeals.

{¶ 11} Davenport's first assignment of error is as follows:

{¶ 12} "THE TRIAL COURT ERRED IN DENYING MR. DAVENPORT'S MOTION TO SUPPRESS."

{¶ 13} In his first assignment, Davenport contends that the trial court erred when it overruled his motion to suppress. Specifically, Davenport argues that Sgt. Landis did not have a reasonable, articulable suspicion to initiate a traffic stop of his vehicle based only upon a perceived window tint violation. Davenport also argues that once his vehicle had been stopped, Sgt. Landis did not have probable cause to search the passenger compartment of the vehicle.

{¶ 14} As this Court has previously noted:

Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted). At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence. *State v. Hurt,* 2d Dist. Montgomery No. 21009, 2006–Ohio–990, ¶ 16.

*State v. Purser,* 2d Dist. Greene No. 2006 CA 14, 2007–Ohio–192, ¶ 11.

{¶ 15} Initially, we note that the only witness who testified at the hearing held on Davenport's motion to suppress was Sgt. Landis. The trial court found his testimony

credible and adopted it as the court's factual findings.

**The Initial Traffic Stop**

**{¶ 16}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *State v. Martin,* 2d Dist. Montgomery No. 20270, 2004–Ohio–2738, ¶ 10, citing *Terry; State v. Mays,* 119 Ohio St.3d 406, 2008–Ohio–4539, 894 N.E.2d 1204, ¶ 7–8. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* 2d Dist. Montgomery No. 19323, 2003–Ohio–1047, ¶ 14, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991).

**{¶ 17}** " 'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears,* 8th Dist. Cuyahoga No. 94997, 2011–Ohio–930, ¶ 5, citing *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Scott,* 2d Dist. Clark No. 2013 CA 104, 2014–Ohio–4963, ¶ 12.

**{¶ 18}** We have repeatedly held that a traffic stop for a suspected window-tint violation is lawful. *See, e.g., State v. Cole,* 2d Dist. Montgomery No. 26576, 2015–Ohio–5295, ¶ 16; *Scott,* 2d Dist. Clark No. 2013 CA 104, 2014–Ohio–4963, at ¶ 12; *State v. Carson,* 2d Dist. Montgomery No. 26505, 2015–Ohio–4110; *State v. Dudley,* 2d Dist.

Montgomery No. 24904, 2012–Ohio–960, ¶ 8, citing *State v. Taylor,* 114 Ohio App.3d 416, 683 N.E.2d 367 (2d Dist.1996). The Ohio Supreme Court has also held that, whether pretextual or not, a traffic violation, including a tint violation, gives an officer a reasonable, articulable suspicion justifying a traffic stop. *See State v. Mays,* 119 Ohio St.3d 406, 2008–Ohio–4539, 894 N.E.2d 1204, ¶ 20. Ohio law requires that, where windows are tinted, 70% of light pass through a windshield and 50% of light pass through the front side windows. Ohio Adm. Code 4501–41–03(A)(2)–(A)(3).

{¶ 19} At the suppression hearing in Davenport's case, Sgt. Landis testified that the tint on the vehicle's windows was so dark that it immediately caught his attention and that he could not see inside the vehicle nor discern how many occupants were inside the vehicle. On cross-examination, Davenport elicited testimony from Sgt. Landis that the tinting on the window had never been tested, that no citation had been issued for that offense, and that the tint had been the "pretext" to justify the traffic stop. However, whether pretextual or not, it is well established that a traffic violation, including a tint violation, gives an officer a reasonable articulable suspicion justifying a traffic stop. See *State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 17. Davenport did not present any evidence to contradict Sgt. Landis' testimony that the vehicle's windows were darkly tinted. Therefore, the trial court reasonably concluded that the traffic stop was not unconstitutional. *Id.*

### Warrantless Search of Vehicle

{¶ 20} The trial court relied upon the automobile exception in denying Davenport's motion to suppress. Since no arrest occurred at the scene, we shall address this issue alone without consideration of the inventory exception. Under the automobile exception,

police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband, and exigent circumstances necessitate a search or seizure. *State v. Mills,* 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).   A vehicle's mobility is the traditional exigency for this exception to the warrant requirement, and no other exigency is required. *Mills* at 367; *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.E.2d 442 (1999); *California v. Carney,* 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).   "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996).

{¶ 21} Sgt. Landis testified that he believed he had probable cause to search the vehicle because he detected the faint smell of burnt marijuana and the strong odor of air freshener when Davenport rolled down the driver's window upon their initial encounter after the traffic stop.   "The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Chase*, 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, ¶ 23, citing *State v. Moore,* 90 Ohio St.3d 47, 734 N.E.2d 804 (2000).   Sgt. Landis' testimony established that he smelled the faint odor of burnt marijuana coming from Davenport's vehicle and that he was qualified to recognize that odor as a sixteen-year veteran of the police force.   The record thus demonstrates that Sgt. Landis had probable cause to believe that Davenport's vehicle contained contraband, and he was, therefore, permitted under the automobile exception to search the vehicle.

{¶ 22} Conversely, Davenport relies upon *State v. Farris,* 109 Ohio St.3d 519, 2006–Ohio–3255, 849 N.E.2d 985, wherein the Ohio Supreme Court wrote that a trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches under the automobile exception. *Id.* at ¶ 51.  The *Farris* court held that the odor of burnt marijuana in the passenger compartment of a vehicle did not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle. *Id.* at ¶ 52. We note the search in this case did not extend to the trunk of Davenport's vehicle, thus his reliance upon *Farris* is misplaced.

{¶ 23} Based upon his detection of the faint odor of burnt marijuana emanating from Davenport's vehicle, Sgt. Landis possessed the probable cause necessary to search the passenger compartment of the vehicle which included the cup holder in the center console.   When probable cause is found to exist under the facts and circumstances of a given case, law enforcement officers have the necessary constitutional justification to explore any areas in the vehicle, including all movable containers and packages that may reasonably contain the object of their search. *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 33; *State v. Welch,* 18 Ohio St.3d 88, 92, 480 N.E.2d 384 (1985).   Sgt. Landis testified that he observed that the cup holder appeared to have been recently disturbed or moved and that it was not resting correctly in the center console. Sgt. Landis also testified that in his experience as a police officer, he had observed people storing items in the cup holder that they wanted to hide from view.   Because Sgt. Landis had probable cause to conduct a warrantless search of the passenger compartment of the vehicle for contraband, his subsequent discovery of the baggie of heroin capsules under the cup holder did not violate Davenport's Fourth Amendment rights.   Accordingly,

the trial court did not err when it overruled Davenport's motion to suppress in Case No. 2014 CR 4132.

**{¶ 24}** Davenport's first assignment of error is overruled.

**{¶ 25}** Because they are interrelated, Davenport's second and third assignments of error will be discussed together as follows:

**{¶ 26}** "THE TRIAL COURT ERRED BY FINDING WITHOUT A HEARING THAT DEFENDANT COULD REASONABLY PAY THE MANDATORY FINE PURSUANT TO R.C. 2929.18."

**{¶ 27}** "DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE AS IT RELATES TO THE FILING OF AN AFFIDAVIT OF INDIGENCY PRIOR TO SENTENCING."

**{¶ 28}** In his second assignment of error, Davenport argues the trial court erred in imposing a fine without adequately determining his ability to pay by failing to conduct a hearing.  In his third and final assignment, Davenport contends that his counsel was ineffective for failing to file an affidavit of indigency on his behalf prior to his sentencing hearing in order to avoid the mandatory fine.

**{¶ 29}** As previously discussed, Davenport was ordered to pay a $7,500 mandatory fine as part of his sentence. Davenport disputes the imposition of the fine, alleging violations of R.C. 2929.18(B)(1), which prohibits an imposition of an otherwise mandatory fine against an indigent offender, and R.C. 2929.19(B)(5), which requires consideration of the offender's present and future inability to pay.

**{¶ 30}** R.C. 2929.18(B)(1) imposes a mandatory fine for a first, second, or third degree felony violation of any provision of Chapter 2925, 3719, or 4729 of the Revised Code. In Case No. 2014 CR 4132, Davenport pled no contest to one count of possession

of heroin (100 unit doses but less than 500 unit doses), in violation of R.C. 2925.11(A), a felony of the second degree, thereby subjecting him to the mandatory fine set forth in R.C. 2929.18(B)(1).

{¶ 31} Although Davenport's fine was mandatory under R.C. 2929.18, the trial court still was obligated by R.C. 2929.19(B)(5) to consider his "present and future ability to pay." A hearing on a defendant's ability to pay is not required. Nor is a court required to make findings. "All that is required is that the trial court 'consider' a defendant's ability to pay." *State v. Hodge,* 2d Dist. Montgomery No. 23964, 2011–Ohio–633, ¶ 55 (citations omitted). "[A] trial court is not required to expressly state that it considered [a defendant's] ability to pay a fine." *State v. Parker,* 2d Dist. Champaign No. 03CA0017, 2004–Ohio–1313, ¶ 42. Under appropriate circumstances, a reviewing court may infer that a trial court considered the issue. *Id.*

{¶ 32} Regarding the imposition of the mandatory fine, the following exchange occurred at Davenport's sentencing hearing:

> Defense Counsel: ** I also have filed the affidavit of indigency on the so-called mandatory file on the F2 so –
>
> The Court: Okay. I'll take a look at that. I'll impose the mandatory sentence, mandatory fine, but then I'll look at the issue in the aftermath of that.
>
> Defense Counsel: Okay.
>
> The Court: Yeah, that's fine.
>
> ***
>
> The Court: *** In Case [No.] 2014 CR 4132, the Court imposes a

mandatory fine of $7,500.00.

[Defense Counsel], I understand that you'll be presenting the Court with a request that the Court, based upon the indigency of Mr. Davenport, refrain from levying the mandatory fine. *I will consider that.* At this point, I'm imposing the mandatory fine but I will consider the issue of whether the fine should be lifted.

Defense Counsel: Judge, for the record, just so it's clear, the affidavit of indigency was filed this morning prior to sentencing so –

The Court: Okay. And I've simply not seen it at this juncture.

Defense Counsel: Yes, sir. Understood.

**{¶ 33}** For purposes of the statute, being "indigent" and being "unable to pay" are not the same. Indigency concerns a defendant's current financial situation, whereas an inability to pay encompasses his future financial situation as well. *See, e.g., State v. Gipson,* 80 Ohio St.3d 626, 636, 687 N.E.2d 750 (1998) ("[A] trial court's determination whether an offender is indigent and is unable to pay a mandatory fine can (and should) encompass future ability to pay. If the General Assembly had intended otherwise, the statutes would have been written to permit a waiver of the mandatory fines based solely on a defendant's present state of indigency, and would not have also required trial courts to consider the additional question whether the offender is 'unable to pay.' "); *State v. Ficklin,* 8th Dist. Cuyahoga No. 99191, 2013–Ohio–3002, ¶ 13 (recognizing that " 'indigency' refers to a present financial ability and 'is unable to pay' encompasses a future ability to pay as well").

**{¶ 34}** Under the statute, "the burden is upon the offender to affirmatively

demonstrate that he or she is indigent and is *unable to pay* the mandatory fine." (Emphasis sic.) *Gipson* at 635. Contrary to the suggestion in Davenport's brief, a trial court need not affirmatively find that an offender is able to pay. *Id.* Rather, the fine is mandatory unless the offender establishes current indigence and an inability to pay. *Id.* A trial court need only consider the issue, which it frequently can do by reviewing a pre-sentence investigation report that contains enough pertinent information. *State v. Barker,* 2d Dist. Montgomery No. 26061, 2014–Ohio–3946, ¶ 15. "We review a trial court's decision on an offender's present and future ability to pay a mandatory fine for an abuse of discretion." *Id.* at ¶ 16. An abuse of discretion often involves a decision that is unreasonable*. Id.*

{¶ 35} Having reviewed the record, we see no abuse of discretion in the trial court's refusal to waive Davenport's mandatory fine. As set forth above, the fine in this case was mandatory unless Davenport alleged in a pre-sentence affidavit "that [he] is indigent *and* unable to pay the mandatory fine[.]" (Emphasis added). R.C. 2929.18(B)(1). Here, the affidavit Davenport filed at the same time as his sentencing hearing is a hand-completed copy of Ohio Public Defender form 206R which is the "Financial Disclosure/Affidavit of Indigency" form utilized for determining whether a defendant is entitled to appointment of counsel. Therein, Davenport averred that he was indigent and was "financially unable to retain private counsel without substantial hardship[.]" Neither his affidavit nor an accompanying financial disclosure form even mentioned his ability to pay the mandatory fine, which, as explained above, encompasses future ability to pay and differs from the issue of current indigency. Merely alleging indigency and an inability to afford private counsel does not establish an inability to pay a fine. *See State v.*

*Plemons*, 2d Dist. Montgomery Nos. 26434, 26435, 26436, 26437, 2015-Ohio-2879, ¶ 9. Indeed, "[a] finding of indigence for purposes of appointed counsel does not shield the defendant from paying a fine." *State v. Lewis,* 2d Dist. Greene No. 2011–CA–75, 2012–Ohio–4858, ¶ 16. " 'This is because the ability to pay a fine over a period of time is not equivalent to the ability to pay legal counsel a retainer fee at the onset of criminal proceedings.' " *Id.,* quoting *State v. Kelly,* 145 Ohio App.3d 277, 284, 762 N.E.2d 479 (12th Dist.2001). As we found in *Plemons*, Davenport's failure to file a pre-sentence affidavit alleging that he is indigent and is unable to pay the mandatory fine is, alone, a sufficient reason to affirm the trial court's decision. *Id.* at ¶ 9. Absent such an affidavit, R.C. 2929.18(B)(1) made the fine mandatory. *Id.*

{¶ 36} Additionally, we note that the affidavit indicated that Davenport lived with his mother and that she covered all of his living expenses. Despite the fact that all of his living expenses were covered by his mother, Davenport claimed in the affidavit that he received income totaling $721.00 per month. Furthermore, at the time of his sentencing, Davenport was twenty-eight years old. Upon receiving a mandatory three-year prison term, Davenport will only be thirty-one when he is released. According to both the affidavit of indigency and his PSI, Davenport lived with his parents who covered his living expenses and helped him financially in other ways. The PSI also indicated that Davenport had paid off his case in full in a prior conviction for trafficking in heroin (Case No. 2014 CR 0071/2) in which he received Intervention in Lieu of Conviction (ILC). Significantly, Davenport was able to post bond in the amount of $25,000.00, as well as retain private counsel to represent him before the trial court in the instant case. Simply put, Davenport failed to meet his burden to establish that he did not have the future ability

to pay the mandatory fine. Accordingly, the trial court did not abuse its discretion when it ordered Davenport to pay the mandatory fine.

{¶ 37} Finally, Davenport argues that his trial counsel was ineffective for failing to timely file the required affidavit to waive the mandatory fine under R.C. 2929.18(B)(1). " 'The failure to file an affidavit of indigency prior to sentencing may constitute ineffective assistance of counsel if the record shows a reasonable probability that the trial court would have found Defendant indigent and relieved him of the obligation to pay the fine had the affidavit been filed.' " *State v. Howard,* 2d Dist. Montgomery No. 21678, 2007-Ohio-3582, ¶ 15, quoting *State v. Sheffield*, 2d Dist. Montgomery No. 20029, 2004-Ohio-3099, ¶ 5.

{¶ 38} In *Sheffield,* this Court considered factors such as age, criminal record, employment history, ability to post bond, ability to retain counsel for trial, and the untimely affidavit of indigency to determine whether the record showed a reasonable probability that the trial court would have found the defendant indigent and waived the mandatory fine. *Id.* at ¶ 15.

{¶ 39} As previously noted, Davenport's trial counsel filed the affidavit of indigency immediately prior to or contemporaneously with the beginning of the sentencing hearing. As such, the trial court did not have the opportunity to review the affidavit prior to the sentencing hearing. Nevertheless, the record does not show a reasonable probability that the trial court would have found Davenport indigent and waived the fine even if it had the opportunity to review the affidavit prior to sentencing. As stated above, Davenport's PSI indicated that he lived with his parents who covered his living expenses and helped him financially. Moreover, the trial court stated on the record that it intended to review

the affidavit of indigency filed by defense counsel after the sentencing hearing, the same affidavit which indicated that Davenport lived with his mother and that she covered all of his living expenses while he still received $721.00 per month. We note that the judgment entry of conviction was filed on March 29, 2016, one day after the oral pronouncement. Additionally, Davenport was able to post bond in the amount of $25,000.00 and retain private counsel throughout the proceedings before the trial court, up to and including sentencing.

**{¶ 40}** In light of the aforementioned facts, Davenport has not demonstrated ineffective assistance of counsel. We do not find that a reasonable probability exists that the trial court would have found Davenport indigent if his trial counsel had filed an affidavit of indigency prior to sentencing.

**{¶ 41}** Davenport's second and third assignments of error are overruled.

**{¶ 42}** All of Davenport's assignments of error having been overruled, the judgment of the trial court is affirmed, and the stay with respect to his sentence is lifted.

. . . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.

Copies mailed to:

Heather N. Jans
Thomas W. Kidd, Jr.
Hon. Michael W. Krumholtz