**[Cite as *State v. Casteel*, 2017-Ohio-8303.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 16CA19 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| MIRANDA M. CASTEEL, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 10/18/17** |

_____

APPEARANCES:

Brian A. Smith, Brian A. Smith Law Firm, LLC, Akron, Ohio, for
Appellant.

Kevin A. Rings, Washington County Prosecuting Attorney, and Alison L.
Cauthorn, Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.

_____

McFarland, J.

**{¶1}** Miranda Casteel appeals from her conviction for aggravated

possession of drugs, a charge to which she pleaded no contest after the trial

court denied her motion to suppress.  On appeal, Appellant contends that 1)

the trial court erred in denying her motion to suppress; and 2) the trial

court's decision to admit the audio recording of the conversation between

Sergeant Heddleston and herself that was recorded at a Rite Aid Store was

an abuse of discretion.  Having found no merit to either of the assignments

of error raised by Appellant, the judgment of the trial court is affirmed, as is

the trial court's decision denying Appellant's motion to suppress.

FACTS

{¶2} Appellant was indicted on one count of aggravated possession of

drugs, a fifth degree felony in violation of R.C. 2925.11 on July 31, 2015.

The indictment stemmed from an encounter between Appellant and law

enforcement that occurred on May 3, 2015, in which two pills, later

determined to be a controlled substance for which Appellant did not have a

prescription, were found after a search of Appellant's purse.  Appellant

pleaded not guilty to the charge and then filed a motion to suppress "all

evidence obtained as a result of the stop of Defendant by Sargent [sic]

Heddleston * * *."  The motion further stated that "[s]aid suppression is

warranted by the fact that the Defendant was detained and interviewed

without the benefit of Miranda Warnings."[1]  No memorandum in support of

the motion was attached.  A suppression hearing was held as a result.

{¶3} Sergeant Heddleston testified on behalf of the State at the

suppression hearing.  He testified that on the date in question, as he was

beginning his patrol, he noted a car parked oddly and partially blocking the

entrance to a local Rite Aid store.  He testified that the windows in the car

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

were down and that there was a child seat and an axe in the back seat of the car. As he was inquiring with store employees regarding the car, he was dispatched a few streets over to a report of a woman with a child looking into car windows. Sergeant Heddleston testified that he found Appellant and a child walking along a sidewalk a few streets away from the store and stopped to speak with her. He testified that he got out of his car and approached her on a public sidewalk and initially asked her is she was okay, to which she responded yes.

{¶4} He testified that she denied looking in car windows, and then said she was looking but had not taken anything. When asked if the car at Rite Aid was hers she said no, however, the child that was with her said "Quit lying Mommy." Sergeant Heddleston testified he asked again and advised Appellant she could be arrested for lying to a police officer. He then asked her to step down to his cruiser to speak with him. According to Sergeant Heddleston, Appellant said no and that she was fine to stay on the sidewalk, which she did initially. Appellant then advised the sergeant that the car was not hers, but that it belonged to her ex-boyfriend and that she could call him. As she tried to access her purse for her phone, Sergeant Heddleston asked her to put her purse on his cruiser and asked her if there was anything illegal in her purse. She responded no. He testified that he

then asked permission to search her purse, to which she responded "Go ahead."

{¶5} Sergeant Heddleston testified that upon searching her purse he found several prescriptions and also found two pills which were ultimately determined to be a controlled substance for which Appellant did not have a prescription. When he asked Appellant about the pills she stated she did not know anything about them. Sergeant Heddleston testified that Appellant was never placed under arrest, was never advised she was under arrest, was never handcuffed, and that no other officers were present. In fact, Sergeant Heddleston testified that he advised Appellant she was welcome to walk back to the Rite Aid store, where her ex-boyfriend was coming to pick up the car, and he would meet her there. At that point, Appellant left with the child and walked back to the store. She was not at any point put into the cruiser or driven there. The sergeant testified that he met her back at the store and then took a recorded statement from her, in which he advised that she was not under arrest, that she was free to leave and reaffirmed that she had provided consent to search her purse. According to Heddleston's testimony, Appellant advised him at that time that although she did have prescriptions for "ADH" (ADHD) drugs, she did not have a prescription for

the two pills found in her purse, which were ultimately determined to be Ritalyn. At that point, Appellant went on her way.

{¶6} During the hearing, the State sought to admit the audio recording for the trial court's review. Although defense counsel stipulated that the recording was in fact a recording between the sergeant and Appellant, he objected based upon relevancy, explaining that the statements made on the recording occurred after the initial encounter and were not the subject of the suppression motion. The trial court allowed the recording to be submitted over the objection of Appellant. After considering post-hearing briefs, the trial court denied Appellant's motion to suppress. Appellant thereafter entered a plea of no contest to the charge. Appellant has now filed a timely appeal from the trial court's judgment, setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

II.     THE TRIAL COURT'S DECISION TO ADMIT THE AUDIO RECORDING OF THE CONVERSATION BETWEEN SERGEANT HEDDLESTON AND APPELLANT, AT THE RITE AID STORE, WAS AN ABUSE OF DISCRETION."

ASSIGNMENT OF ERROR I

{¶7} In her first assignment of error, Appellant contends the trial court erred in denying her motion to suppress. "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8; citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *See also State v. Codeluppi*, 139 Ohio St.3d 165, 2014–Ohio–1574, 10 N.E.3d 691, ¶ 7; *State v. Wesson*, 137 Ohio St.3d 309, 2013–Ohio–4575, 999 N.E.2d 557, ¶ 40. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8; citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*. at ¶ 8; citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). *See also State v. Roberts*, 110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100.

{¶8} Appellant contends that because she did not receive *Miranda* warnings, the issue is whether she was in custody for *Miranda* purposes and whether the trial court should have suppressed all evidence derived from the police encounter.  Appellant further contends that she *was* in custody for purposes of *Miranda,* and thus argues that all evidence from the police encounter should have been suppressed, including the search of her purse, which she argues was "derived from police questioning."  Appellant argues that her incriminatory statements should be suppressed because she was not *Mirandized*, and that she was "in custody" because she did not feel free to walk away from the police encounter.  Finally, with regard to the search of her purse, she argues that her consent to search was involuntary, citing in support the fact that "there is no indication that [she] was aware of her right to refuse to consent to Heddleston's questioning, or to his demand that he be allowed to search her purse."

{¶9} The State contends that Appellant argues, for the first time on appeal, that her consent to search was involuntary.  The State points out that Appellant "never alleged that the physical evidence should be suppressed because her consent to search was coerced or involuntary."  The State further argues that law enforcement officers are not constitutionally required to issue *Miranda* warnings before asking for consent to search, and that

because the issue of voluntariness of consent has been waived, Appellant's

first assignment of error should be overruled.  The State further posits that

the evidence found in Appellant's purse was found after she consented to a

search of her purse, that *Miranda* warnings are not required for an officer to

request consent to search, and therefore, the questions of whether Appellant

was in custody, and whether she should have received *Miranda* warnings,

are irrelevant.

{¶10} With regard to the State's waiver argument, this Court recently

noted in *State v. Davis*, 2016-Ohio-3539, 67 N.E.3d 33, ¶ 52 (4th Dist.2016)

as follows:

> " 'It is well settled that issues not raised in an original motion to
> suppress cannot be raised for the first time on appeal.' " *State v.
> Jones*, 4th Dist. Highland No. 04CA9, 2005-Ohio-768, 2005
> WL 433433, ¶ 18; *see also State v. Markins*, 4th Dist. Scioto
> No. 10CA3387, 2013-Ohio-602, 2013 WL 658264, ¶ 25. As we
> stated in *Jones*, this is no mere technicality. *Id*. Crim.R. 47
> requires a motion to suppress to 'state with particularity the
> grounds upon which it is made and [to] set forth the relief or
> order sought.' *State v. Rife*, 4th Dist. Ross No. 11CA3276,
> 2012-Ohio-3264, 2012 WL 2928546, ¶ 17. 'These requirements
> exist because "the prosecutor cannot be expected to anticipate
> the specific legal and factual grounds upon which the defendant
> challenges the legality of a warrantless search." ' *Id*., quoting
> *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889
> (1988)."

{¶11} Here, Appellant's motion to suppress sought suppression of "all

evidence obtained as a result of the stop of Defendant by Sargent [sic]

Heddleston on May 3, 2015 in the City of Belpre, Ohio." The motion further specified that "[s]aid suppression is warranted by the fact that the Defendant was detained and interviewed without the benefit of Miranda Warnings." There was no memorandum attached in support of the motion and the motion alleged no other grounds for suppression of the evidence. Importantly, the motion did not seek suppression of the evidence seized during the search of Appellant's purse on the basis that her consent to search was involuntarily given. Based upon the foregoing, Appellant's argument that the physical evidence found during a search of her purse should be suppressed has been waived to the extent that it is premised upon a contention that her consent to search was involuntarily given. As such, we will not address this argument for the first time on appeal. *State v. Davis* at ¶ 53 (where this Court refused to consider the appellant's argument that the warrantless search of her passengers and her purse exceeded the scope of her consent, where the issue was not raised before the trial court and was not fully developed during the trial court proceedings).

{¶12} Additionally, Appellant contends that the physical evidence recovered from her purse should be suppressed because she was not provided with *Miranda* warnings during the police encounter, during which time Appellant contends she was in custody. Thus, Appellant urges this

Court to find that she was, in fact, in custody for purposes of triggering a *Miranda* warning, and that the failure to provide her with *Miranda* warnings mandates that the physical evidence recovered as a result of a consent search of her purse must be suppressed. As set forth above, the State does not concede that Appellant was in custody or that she should have been provided with *Miranda* warnings. The State further contends that *Miranda* warnings are not required to validate a consent to search. Based on the following reasons, we agree with the State and therefore reject Appellant's argument.

{¶13} The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." To safeguard a suspect's Fifth Amendment privilege against self-incrimination, law enforcement officers seeking to perform a custodial interrogation must warn the suspect "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona, supra,* at 479. In the absence of these warnings, a suspect's incriminatory statements made during a custodial interrogation are inadmissible at trial. *Michigan v. Mosley*, 423 U.S. 96, 99-100, 96 S.Ct. 321 (1975) (footnote and citation omitted)

("[U]nless law enforcement officers give certain specified warnings before questioning a person in custody, and follow certain specified procedures during the course of any subsequent interrogation, any statement made by the person in custody cannot over his objection be admitted in evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary."); *Miranda* at 479 (stating that no evidence stemming from the result of a custodial interrogation may be used against defendant unless procedural safeguards employed); *State v. Maxwell*, 139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930, ¶ 113 (stating that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."). Moreover, under Section 10, Article I of the Ohio Constitution "evidence obtained *as the direct result of statements* made in custody without the benefit of a *Miranda* warning should be excluded." *State v. Farris*, 109 Ohio St.3d 519, 529, 2006-Ohio-3255, 849 N.E.2d 985, 996, ¶ 49) (Emphasis added); *but see United States v. Patane*, 542 U.S. 630, 124 S.Ct. 2620 (2004) (holding that violation of *Miranda* does not require suppression of nontestimonial evidence).

{¶14} However, *Miranda* does not protect every individual who is subjected to police questioning. *State v. Hoffner*, 102 Ohio St.3d 358, 2004–Ohio–3430, 811 N.E.2d 48, ¶ 26; *State v. Biros*, 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997); citing *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711 (1977). " 'Nor is the requirement of warnings to be imposed simply because * * * the questioned person is one whom the police suspect.' " *Biros*, 78 Ohio St.3d at 440; quoting *Oregon* at 494. Instead, "[o]nly custodial interrogation triggers the need for *Miranda* warnings." *Id.* at 440 (citations omitted).

{¶15} *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444; *accord Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526 (1994); *Oregon* at 495 (stating that the *Miranda* protection attaches "only where there has been such a restriction on a person's freedom as to render him in 'custody' "). In Ohio, it has consistently been stated that "[i]n order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was

not at liberty to terminate the interview and leave." *State v. Hoffner*, 102

Ohio St.3d 358, 2004–Ohio–3430, 811 N.E.2d 48, ¶ 27; citing *Thompson v.*

*Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457 (1995); *accord J.D.B. v. North*

*Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 2402, 180 L.Ed.2d 310 (2011).  As

set forth above, Appellant argues she did not feel free to leave the encounter

and she points to testimony during the suppression hearing by Sergeant

Heddleston in which he stated he could see where she may have felt, from

her perspective, that she was not free to leave.

{¶16} However, in a more recent decision, the Supreme Court of Ohio

has now held that the test is not whether a reasonable person believes

himself or herself to be free to leave, but rather the relevant inquiry is

"whether a reasonable person in the suspect's position would have

understood himself or herself to be *in custody*." *Cleveland v. Oles*, 2017-

Ohio-5834, -- N.E.3d –, ¶ 30 (2017).  In announcing this new test, the Court

reasoned as follows:

> "This nuance is important and well reasoned.  If the inquiry
> were whether the driver felt free to leave, then every traffic stop
> could be considered a custodial interrogation because 'few
> motorists would feel free either to disobey a directive to pull
> over or to leave the scene of a traffic stop without being told
> they might do so,' [*Berkemer v. McCarty*, 468 U.S. 420, 436,
> 104 S.Ct. 3138 (1984).]  And a law-enforcement officer, in the
> midst of investigating a traffic stop and performing all its
> attendant procedures, would not consider a driver free to leave

unless given permission.  But 'not free to leave' and 'in custody' are distinct concepts." *Id.*

The Court further reasoned that:

> "For purposes of constitutional privilege against self incrimination, the test is not whether the individual feels free to leave but whether the situation 'exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." *Id.* at ¶ 31; quoting *Berkemer* at 437.

Ultimately, in *Cleveland v. Oles* the Court found, based on the totality of the circumstances, that the suspect was not in custody and that no constitutional violation occurred where the suspect was stopped, asked to step out of the vehicle and sit in the front seat of the patrol car, questioned regarding his destination and how much alcohol he had consumed that evening, directed to perform field sobriety tests, failed the tests, and was arrested, all without receiving *Miranda* warnings. *Id.* at ¶ 2-4, 33.

{¶17} The Supreme Court of Ohio has held that an individual temporarily detained as part of a routine traffic or investigatory stop ordinarily is not "in custody" and is not, therefore, entitled to *Miranda* warnings. *State v. Farris*, 109 Ohio St.3d 519, 2006–Ohio–3255, 849 N.E.2d 985, ¶ 13; citing *Berkemer v. McCarty* at 439–440 (noting that investigative stops are not subject to *Miranda* requirements and holding that *Miranda* not implicated during traffic stop for swerving when officer questioned driver

about his drinking).  Thus, "most traffic stops and accompanying investigatory questioning do not constitute custodial interrogations warranting the right to *Miranda* warnings." *State v. Brocker*, 11th Dist. Portage No. 2014–P–0070, 2015–Ohio–3412, ¶ 17 (citations omitted); *see State v. Jackson*, 9th Dist. Summit Nos. 27132, 27200, 27133, 27158, 2015– Ohio–5246 (determining that *Miranda* did not apply to traffic stop during which officer asked defendant where he had been and whether he had purchased any items at the store where he had been); *State v. Campbell*, 2nd Dist. Montgomery No. 26497, 2015–Ohio–3381, (determining that *Miranda* not implicated during investigative stop to ascertain whether eighteen-year-old defendant had been drinking when there was no evidence that defendant was handcuffed, and the defendant was not informed that he was under arrest or detained in police car); *State v. Smoot*, 2nd Dist. Montgomery No. 26297, 2015–Ohio–2717, 38 N.E.3d 1094, 1112–13, ¶ 41 (determining that defendant was not in custody for purposes of *Miranda* when officer asked defendant about the contents of his vehicle during traffic stop); *State v. Vineyard*, 2nd Dist. Montgomery No. 25854, 2014–Ohio–3846 (determining that defendant not in custody during traffic stop even though officer asked defendant to exit his vehicle and asked defendant whether he had any weapons); *State v. Ware*, 8th Dist. Cuyahoga No. 89945, 2008–Ohio–2038

(concluding that *Miranda* was not applicable during a routine traffic stop in which officer asked defendant if he had any weapons, drugs, or contraband in the vehicle); *State v. Leonard*, 1st Dist. Hamilton No. C–060595, 2007–Ohio–3312 (holding that *Miranda* warnings were not required when an officer removed defendant from his vehicle and placed defendant in front passenger seat of officer's patrol vehicle for questioning). However, during a traffic or investigative stop circumstances may change and render an individual "in custody" for practical purposes and, thus, " 'entitled to the full panoply of protections prescribed by *Miranda*.' " *Farris* at ¶ 13; quoting *Berkemer* at 440.

{¶18} Here, a review of the record reveals that the evidence presented at the suppression hearing failed to establish that Appellant was in custody at any point during the encounter with law enforcement. And, Appellant was approached by law enforcement during daylight hours, while she was on foot in a public place. There is no evidence in the record that suggests Appellant's interaction with law enforcement was anything but consensual and importantly, when the officer requested Appellant step down to his cruiser to speak with him she refused and stated she was fine to stay on the sidewalk, which she did. In fact, she did not step down to his cruiser until afterwards, when the officer asked if he could search her purse as she was

reaching into it to obtain her identification and later her cell phone. When the officer requested to search her purse, Appellant stated "Go ahead."

{¶19} Further, and notably, after thoroughly reviewing the record, including the motion to suppress, post-hearing briefs, transcript from the suppression hearing and appellate briefs, this Court has been unable to identify any allegedly incriminatory statement made by Appellant during the encounter. At the time when Appellant was being questioned on the sidewalk and beside the cruiser, she simply denied having anything illegal in her purse, provided consent to search, and then stated she did not know anything about the pills that were found. There were no incriminatory statements made by Appellant at the time that even related to the drugs found in her purse. The trial court noted as much in its decision denying Appellant's motion to suppress, stating as follows:

> "Taking the evidence in its entirety, the Court finds that the Defendant was not in custody, was free to leave at any time and ultimately walked away; *that there are not statements being used by the State*, and finally, that the discovery of the illegal drugs was the result of a consensual search." (Emphasis added).

Thus, the illegal drugs recovered from Appellant's purse were not linked with any statement made by Appellant and thus were not "derived" from the questioning of Appellant by law enforcement. Also, of importance and as referenced by the State in its brief, this Court has previously held that

" '[t]he weight of authority holds that prior *Miranda* warnings are not required to validate consent searches, even when the consent is obtained after the defendant is effectively in custody.' " *State v. Henson*, 4th Dist. Highland No. 05CA13, 2006-Ohio-2861, ¶ 30 (in response to an argument that the appellant's consent was invalid because *Miranda* warnings were not given prior to obtaining consent to search); quoting *State v. Clelland*, 83 Ohio App.3d 474, 481, 615 N.E.2d 276 (1992); citing *State v. Austin*, 52 Ohio App.2d 59, 368 N.E.2d 59 (1976).

{¶20} Further, despite Appellant's argument that because she did not feel free leave she was thus in custody for purposes of *Miranda*, as set forth above, the newer test announced by the Supreme Court of Ohio in *Cleveland v. Oles* does not focus on that particular question, but instead focuses on whether the situation exerted upon Appellant pressure sufficient to impair her free exercise of her privilege against self-incrimination to require that she be warned of her constitutional rights. We cannot conclude, based upon these facts, that such a situation existed. Additionally, with respect to Appellant's argument that law enforcement had a duty to affirmatively inform her that she was not under arrest and was free to leave, the Supreme Court of Ohio has stated in *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997) that the "Ohio Constitution does not require a police

officer to inform an individual stopped for a traffic violation, that he or she is free to go before the officer may attempt to engage in a consensual interrogation." Admittedly, Appellant was not stopped for a traffic violation but the reasoning is nevertheless applicable. Finally, as this Court noted in *State v. Davis, supra,* at ¶ 41, " 'an individual's knowledge of the right to refuse consent 'is not a prerequisite of a voluntary consent.' " Quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 24; in turn quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 234, 93 S.Ct. 2041 (1973).

{¶21} Because Appellant has waived the argument that her consent to search was involuntary, and because we have determined that Appellant was not in custody for purposes of triggering a *Miranda* warning and that Appellant made no incriminating statements during the part of the encounter in question, we reject the arguments raised under Appellant's first assignment of error. Accordingly, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶22} In her second assignment of error, Appellant contends that the trial court's decision to admit the audio recording of the conversation between Sergeant Heddleston and herself, which occurred at the Rite Aid

store, was an abuse of discretion. Appellant specifically argues that the recording was not relevant under Evid.R. 401 and 402, and that it was more prejudicial than probative and should have been excluded under Evid.R. 403. The State contends that the Rules of Evidence are not applicable in suppression hearings and that Appellant's assignment of error should be overruled on that basis. The State further argues that the audio tape was relevant to the trial court's totality of the circumstances analysis in determining whether Appellant was in custody during the earlier portion of the police encounter.

{¶23} The admission or exclusion of evidence generally rests within the trial court's sound discretion. *State v. Minton*, 2016-Ohio-5427, 69 N.E.3d 1108, ¶ 45; *State v. Green*, 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶ 14 (4th Dist.). Thus, an appellate court will not disturb a trial court's ruling regarding the admissibility of evidence absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. *Id*. " 'A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.' " *State v. Williams*, 4th Dist. Jackson No. 15CA3, 2016-Ohio-733, ¶ 17, quoting *State v. Keenan*, 143 Ohio St.3d 397, 2015-Ohio-2484, 38 N.E.3d 870, ¶ 7; quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶24} As set forth above, after the initial encounter with Appellant on the sidewalk and then by the police cruiser, Sergeant Heddleston later met Appellant back at the Rite Aid store, where she had left her ex-boyfriend's car parked, and proceeded to take a recorded statement from Appellant. At the suppression hearing, defense counsel stipulated that the audio recording was a recording between the officer and his client, but objected on relevance grounds, explaining that the suppression motion related to statements obtained prior to the recording being made. The court allowed the recording to be submitted and stated it would review it to determine if it was relevant. In its decision denying the motion to suppress, the trial court simply stated "[a] tape of at least portions of the stop was provided to the Court." The trial court did not cite or quote any portion of the recording in its entry. Further, there is no indication that the audio recording was transcribed, and it was not transmitted to this Court with the rest of the record. Thus, it is not part of the record on appeal.

{¶25} We conclude, albeit after a limited review based upon the fact that we are not able to actually review the audio recording, that even if the recording was made after the initial encounter with police in which Appellant is complaining, that the recording was relevant to the totality of the circumstances analysis undertaken by the trial court. Thus, we find no

error or abuse of discretion in its admission.  Further, because we find it was relevant to the trial court's determinations below, the trial court correctly accepted it into evidence for review as to whether it would ultimately be admissible.

{¶26} Additionally and importantly, as argued by the State, " 'the Rules of Evidence do not apply to suppression hearings.' " *State v. Ulmer*, 4th Dist. Scioto No. 09CA3283, 2010-Ohio-695; ¶ 10; quoting *State v. Bozcar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 17, citing Evid.R. 101(C)(1) & 104(A); *see also State v. Norman*, 4th Dist. Ross Nos. 08CA3059 & 66, 2009–Ohio–5458.  Therefore, " '[a]t a suppression hearing, the court may rely on * * * evidence, even though that evidence would not be admissible at trial.' " *Maumee v. Weisner*, 87 Ohio St.3d 295, 298, 720 N.E.2d 507 (1999); quoting *United States v. Raddatz* (1980), 447 U.S. 667, 679, 100 S.Ct. 2406 (1980).  Accordingly, Appellant's argument fails as a matter of law.

{¶27} Having found no merit in Appellant's second assignment of error, it is also overruled.  Accordingly, we affirmed the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.:  Concur in Judgment and Opinion.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**