[Cite as *State v. Moore*, 2019-Ohio-648.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27973 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-2119 |
| | : | |
| ERIC L. MOORE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of February, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Eric Moore was convicted of possession of cocaine, a fifth degree felony, after entering a no-contest plea. Moore appeals that judgment of conviction, challenging the trial court's pre-plea denial of his motion to suppress evidence seized after a search of his car. The judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} Shortly before 1 a.m. on July 6, 2017, while working alone as a road patrol officer in a residential area in Dayton, Officer William Overholtz of the Dayton Police Department stopped Moore for driving with an unlit front headlight. Upon approaching Moore's vehicle and asking Moore for his driver's license, Officer Overholtz saw that Moore, who was alone in the car, was wearing a hospital mask that concealed his face from the bridge of his nose to his mouth. Officer Overholtz asked Moore what was "up with the mask," to which Moore responded, "Nothing."

{¶ 3} Given Moore's lack of explanation, Officer Overholtz suspected that Moore might be covering his face because he had just committed or was about to commit a crime. Aware that the area was known for drug trafficking and a prevalence of guns, and concerned that Moore might be carrying a weapon to facilitate a crime, Officer Overholtz asked Moore to step out of the vehicle so that Overholtz could conduct a pat-down search for weapons. Moore exited the car, but as Officer Overholtz began to pat down Moore's right pant leg, Moore "began reaching down towards his right pocket." Officer Overholtz said that Moore was agitated, "really nervous," sweaty, and "shaking a little bit." Officer Overholtz instructed Moore "at least * * * twice" to put his hands up on the car, but when Moore continued to fail to comply, the officer "wasn't going to take any more chances."

Officer Overholtz handcuffed Moore before completing the pat down, which yielded only a wadded-up paper towel in Moore's pocket. Officer Overholtz then placed Moore in the back of Overholtz's cruiser "for officer safety reasons," while awaiting backup assistance. Moore was upset, but Officer Overholtz told him that he was not under arrest at that time.

{¶ 4} With Moore secured in the cruiser's back seat and Officer Overholtz in the front, entering information into a computer, Overholtz asked Moore whether "there was anything in [Moore's] car I needed to know about." Moore said no. The officer then asked Moore "if he minded if I check [the car] and [Moore] said absolutely, go ahead and check it." Moore twice explicitly told Officer Overholtz that the officer could check inside Moore's car.

{¶ 5} Upon searching the car, Officer Overholtz found "a waxy-looking substance" inside the pocket of the driver's side door. Based on his experience, Overholtz believed the substance to be crack cocaine. Officer Overholtz returned to his cruiser and informed Moore of his *Miranda* rights. Officer Overholtz then told Moore what he had found in Moore's car. The officer testified that "Moore knew it. He admitted to it. He said he had a drug problem and he needed help." Moore was placed under arrest.

{¶ 6} On July 28, 2017, a Montgomery County grand jury indicted Moore on one fifth-degree felony count of possession of cocaine in violation of R.C. 2925.11(A). Moore entered a plea of not guilty. He thereafter moved to suppress both the evidence seized and any statements he made as a consequence of being stopped, searched, and arrested. Moore argued that the initial traffic stop was unwarranted, that his detention exceeded the scope of the initial stop, that no reasonable basis existed for the pat-down search of his person, that he did not voluntarily consent to the warrantless search of his

vehicle, and that his statements were "fruits of the poisonous tree."

{¶ 7} At a suppression hearing held on October 20, 2017, Officer Overholtz was the only witness, and he testified to the facts outlined above. However, due to a technical issue, the hearing was continued to December 4, 2017, when the State presented a recording from Officer Overholtz's cruiser camera taken during the stop that led to Moore's arrest. (Jt. Exh. I). That recording revealed that after being handcuffed, before being placed into Overholtz's cruiser, and before being given *Miranda* warnings, Moore stated, "I want my lawyer." Officer Overholtz testified that he did not hear that request when Moore made it, but confirmed that Moore's statement to that effect was audible on the cruiser camera recording.

{¶ 8} On January 23, 2018, the trial court granted in part and denied in part Moore's motion to suppress. (Doc. #28). The trial court held that any statements Moore made after he invoked his right to counsel should be suppressed. However, the court determined that the cocaine seized from Moore's car was admissible evidence, as Officer Overholtz lawfully stopped Moore for a traffic violation, the officer had "a reasonable and articulable suspicion that Moore might be armed and dangerous" because his mask suggested that he might be engaged in criminal activity, and Moore voluntarily consented to the search of his car.

{¶ 9} On February 22, 2018, Moore entered a plea of no contest to possession of cocaine, a fifth-degree felony. On April 12, 2018, the trial court sentenced Moore to community control sanctions for a period not to exceed five years.

{¶ 10} Moore appeals that judgment, setting forth these three assignments of error:

1) The officer did not have a reasonable, articulable suspicion to search the

vehicle.

2) The Trial Court incorrectly ruled [Moore] consented to the search.

3) The Trial Court and this Appellate Court have improperly ruled [that] even after a suspect has invoked his right to counsel, the police are not prohibited from asking a suspect to consent to a search.

### Standard of Review

{¶ 11} An appeal from a ruling on a motion to suppress presents a mixed question of fact and law. *State v. Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14, ¶ 15 (2d Dist.), citing *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13, and *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Curley*, 2016-Ohio-7624, 73 N.E.3d 1050, ¶ 9 (2d Dist.), quoting *State v. Retherford,* 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). As a result, when reviewing a suppression decision, this court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *Retherford* at 592. We then "must independently determine as a matter of law, without deference to the trial court's conclusion," whether the facts as found by the trial court meet the applicable legal standard. *Id.*, quoting *Retherford.* "The application of law to the trial court's findings of fact is subject to a de novo standard of review." *Ojezua* at ¶ 15, quoting *State v. Turner*, 2015-Ohio-4612, 48 N.E.3d 931, ¶ 10 (2d Dist.).

### Assignment of Error #1 – Pat Down and Detention

{¶ 12} Although Moore's first assignment of error is phrased as a challenge to the

police officer's search of Moore's vehicle the substance of Moore's arguments under that heading focuses on the officer's pat-down search and detention of Moore following the traffic stop. (*See* Brief of Defendant-Appellant, p. 2-4). Because Moore's *second* assignment of error more aptly targets the circumstances surrounding the vehicle search (*see id.*, pp. 4-6), we will direct our analysis of Moore's first assignment of error to the issue of the lawfulness of his post-stop pat down and detention.[1]

{¶ 13} It is undisputed that Officer Overholtz lawfully stopped Moore for having an inoperable headlight. *See State v. Martina*, 2d Dist. Montgomery No. 18905, 2001 WL 1658157, *3 (Dec. 28, 2001) (police officer has authority "to stop a vehicle he observes driving at night with only one headlight."). After stopping a motorist for a traffic violation, a police officer may order the motorist to get out of his car, even without suspicion of criminal activity. *State v. Dozier*, 187 Ohio App.3d 804, 2010-Ohio-2918, 933 N.E.2d 1160, ¶ 8 (2d Dist.), citing *State v. Evans*, 67 Ohio St.3d 405, 407, 618 N.E.2d 162 (1993) and *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Additionally, "[d]uring a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." *State v. Lozada*, 92 Ohio St.3d 74, 748 N.E.2d 520

---

[1] Notably, the State of Ohio's brief also treats Moore's first assignment of error as asserting "that [Officer Overholtz] exceeded the scope of the traffic stop to continue Moore's detention and the pat down for weapons was unwarranted." (Brief of Appellee, State of Ohio, p. 4).

(2001), paragraph one of the syllabus.[2]

{¶ 14} Still, neither a *Mimms* order to exit the vehicle nor the act of placing the motorist in a police cruiser automatically entitles an officer to pat the driver down for weapons. *Dozier* at ¶ 8, citing *Evans* at 409. To determine whether a driver may be subjected to a pat-down search for weapons, "we must consider whether, based on the totality of the circumstances, the officer had a reasonable, objective basis to believe that the motorist was armed and dangerous." *Id.*, citing *Evans* at 409 and *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). *See also Terry v. Ohio*, 392 U.S. 1, 29-30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (where the sole justification for a warrantless search is protection of a police officer and others nearby, the search "must * * * be confined in scope to an intrusion reasonably designed to discover guns [or other weapons] * * *"; a patdown search of outer surfaces of clothing meets that standard).

{¶ 15} "During the course of an investigatory stop and detention, law enforcement officers may conduct a pat down search for weapons if the officers have reasonable grounds to believe that the suspect is armed and dangerous." *State v. Keggan*, 2d Dist. Greene No. 2006 CA 9, 2006-Ohio-1813, ¶ 26. "The officer need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of others was in danger." *State v. Grefer*, 2d Dist. Montgomery No. 25501, 2014-Ohio-51, ¶ 24, citing *Andrews* at 89.

{¶ 16} The trial court found that Officer Overholtz "was concerned for his safety"

---

[2] The circumstances here differ from those in *Lozada*, where the defendant was placed in a police cruiser solely for the convenience of the officer and the evidence therefore was suppressed. *See Lozada* at 77.

when he began a pat-down search of Moore's person. (Doc. #28, p. 3). The trial court cited specific portions of Officer Overholtz's testimony during the suppression hearing, including his knowledge that the area he was patrolling was a "drug highway" where Dayton police had encountered significant quantities of drugs and guns; Moore's wearing a hospital mask that covered the lower half of his face and Overholtz's familiarity with individuals' concealing their identity with masks when committing crimes, especially robberies; and Moore's reaching toward his pants pocket despite having been advised by Overholtz to keep his hands on the car, an action that Overholtz testified "often means the individual is armed or could be reaching for a weapon." (*Id.*).

{¶ 17} Officer Overholtz identified a number of factors that would lead a reasonably prudent person in his circumstances to believe "that his safety or the safety of others was in danger." *See Grefer* at ¶ 24. Because competent, credible evidence supports the trial court's findings of fact, we are bound to accept those findings. *See Curley*, 2016-Ohio-7624, 73 N.E.3d 1050, at ¶ 9; *Retherford,* 93 Ohio App.3d at 592, 639 N.E.2d 498. The facts as found by the trial court demonstrate that Officer Overholtz's pat down of Moore was lawful.

{¶ 18} We also must consider whether Moore's continued detention following the pat down violated his Fourth Amendment right to be free from unreasonable seizures. The temporary detention of a person during a traffic stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *State v. Mee*, 2017-Ohio-7343, 96 N.E.2d 1020, ¶ 13 (2d Dist.), quoting *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "A seizure justified only by a police-observed traffic violation * * * 'become[s]

unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.*, quoting *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015), quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Therefore, "after the reasonable * * * time for issuing [a] traffic citation has [elapsed], an officer must have a reasonable articulable suspicion of illegal activity to continue the detention." *Id.*, quoting *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.).

{¶ 19} "We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Id.*, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271. Here, the trial court credited Officer Overholtz's testimony that he held Moore in the cruiser both to await the assistance of another officer in completing the pat down and due to Overholtz's suspicion about Moore's presence in a neighborhood known for drug activity, with his face concealed and with no explanation for wearing a hospital mask. (Doc. #28, pp. 4-6). The record contains competent, credible evidence that supports those findings. *See Curley* at ¶ 9; *Retherford* at 592.

{¶ 20} The recording from Overholtz's cruiser camera confirms that fewer than 10 minutes passed from when Officer Overholtz initiated the traffic stop until he discovered drugs while searching Moore's car. (Jt. Exh. 1). Even if the length of a motorist's detention would be unreasonable for the sole purpose of issuing a traffic citation, a police officer is justified in extending the stop if the circumstances give rise to a "reasonable and

articulable suspicion" of criminal activity. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282. The trial court's findings of fact support a conclusion that Officer Overholtz had "a reasonable articulable suspicion of illegal activity" that warranted Moore's continued detention following the initial pat down. Given Overholtz's reasonable articulable suspicion, Moore's relatively brief detention did not violate his constitutional rights.

{¶ 21} Moore's first assignment of error is overruled.

### *Assignment of Error #2 – Consent to Search Vehicle*

{¶ 22} Although a search warrant ordinarily is required before a police officer may search an individual's property, "[c]onsent is an exception to the warrant requirement." *Ojezua*, 2016-Ohio-2659, 50 N.E.3d 14, at ¶ 15. "[T]he State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Id.*, quoting *State v. Robinette*, 80 Ohio St.3d 234, 243, 685 N.E.2d 762 (1997), quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

{¶ 23} We have identified six factors to be considered in determining whether a defendant's consent to a search was voluntary:

1) whether the defendant's custodial status was voluntary;

2) whether coercive police procedures were used;

3) the extent and level of the defendant's cooperation;

4) the defendant's awareness of his or her right to refuse consent;

5) the defendant's education and intelligence; and

6) the defendant's belief that no incriminating evidence would be found.

*State v. Terrell*, 2017-Ohio-7097, 95 N.E.3d 870, ¶ 82 (2d Dist.), citing *State v. George*, 2d Dist. Montgomery No. 25945, 2014-Ohio-4853, ¶ 28. "[A] search may be lawful even if the person giving consent does not recite the talismanic phrase 'You have my permission to search.' * * *" *Id.* at ¶ 83, quoting *State v. Lane*, 2d Dist. Montgomery No. 21505, 2006-Ohio-6830, ¶ 40.

{¶ 24} Although he acknowledges that the trial court "listed the appropriate six factors" enumerated above, Moore asserts that the court erroneously concluded that Moore voluntarily consented to Officer Overholtz's search of Moore's vehicle. Moore first contends that the "coercive" circumstance of being handcuffed and in the back of a police cruiser negated the voluntary nature of his consent. He also maintains that he was demonstrably uncooperative throughout the traffic stop, that Overholtz did not tell him that he could decline to consent, that no evidence was presented as to his education and intelligence, and that "no admissible evidence" was presented regarding his awareness of the presence of incriminating evidence inside his car. Finally, Moore suggests that his purported consent was void because it was obtained after he had invoked his right to counsel.

{¶ 25} We cannot conclude that the trial court erred by determining that Moore voluntarily consented to the vehicle search. While the trial court recognized that Moore's custodial status[3] "was clearly not voluntary" (Factor 1) and that Officer Overholtz "did not advise Moore that he had the right to refuse to consent" (Factor 4) (Doc. #28, pp. 11, 12), those two factors standing alone are not dispositive of the voluntariness of Moore's

[3] Although the State argues that Moore was not in custody and therefore had no right to counsel at that time (*see* Brief of Appellee, pp. 10-14), we need not address that argument in order to conclude that Moore voluntarily consented to the search of his vehicle.

consent. *See, e.g., Scheckloth v. Bustamonte*, 412 U.S. 218, 234, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (an individual's knowledge of the right to refuse consent "is not a prerequisite of a voluntary consent").

{¶ 26} Continuing to consider the other factors, the court found that the police did not use coercive tactics (Factor 2) to acquire Moore's consent; in fact, the trial court observed that Officer Overholtz "[a]t no point * * * raise[d] his voice" and instead "spoke to Moore in a calm and reasoned fashion" throughout their encounter. (Doc. #28, p. 11). Our review of the cruiser camera recording confirms that the trial court's finding to that effect is supported by competent, credible evidence. *See Curley*, 2016-Ohio-7624, 73 N.E.3d 1050, at ¶ 9; *Retherford,* 93 Ohio App.3d at 592, 639 N.E.2d 498.

{¶ 27} Turning to Factor 3, the trial court found that Moore's lack of cooperation throughout much of the traffic stop did not carry over to the issue of searching his car. To the contrary, the court found that Moore readily and "emphatically" encouraged Overholtz to check inside Moore's vehicle. (Doc*. #28*, p. 12). Once again, the cruiser camera recording corroborates the trial court's finding. *See Curley* at ¶ 9; *Retherford* at 592. Furthermore, the court stressed that "[t]he adamant manner in which Moore told Overholtz to check his car weighs heavily in [the trial court]'s conclusion * * * that Moore voluntarily consented to the search of the car." (Doc. #28, p. 12). We cannot say that the trial court erred by affording substantial weight to that finding.

{¶ 28} Regarding Moore's "education and intelligence" (Factor 5), the trial court acknowledged that "[n]o testimony was presented" as to that factor, but found that the cruiser camera recording established that Moore was "an intelligent individual, who was aware of – and unequivocally invoked – his right to counsel." Again, our independent

review of the recording confirms the existence of competent, credible evidence supporting the trial court's finding. *See Curley* at ¶ 9; *Retherford* at 592. The court did not err by weighing that factor as favoring the voluntariness of Moore's consent.

**{¶ 29}** Finally, as to Factor 6, the trial court stated as follows:

Moore was aware that incriminating evidence would be found. Officer Overholtz testified, "It wasn't until after we found the drugs and everything, I went back to him, you know, I told him what I found. And he knew it. He admitted to it. He said he had a drug problem."

(Doc. #28, p. 12).

**{¶ 30}** Moore does not dispute the accuracy of the trial court's finding as to Factor 6 (which is substantiated by the cruiser camera recording), but he faults the court for considering Overholtz's testimony that Moore admitted the drugs were his, because Moore made those incriminating statements after invoking his right to counsel. In advancing that argument, Moore conflates the issue of the admissibility of evidence to prove his *guilt* (for which purpose the trial court suppressed that evidence) with the trial court's consideration of evidence relevant to the issue of the voluntariness of his consent to search. "[S]tatements inadmissible in the prosecution's case-in-chief because of [a] lack of procedural safeguards" nonetheless may be used for other purposes if "the trustworthiness of the statements satisfies legal standards." *See State v. Williams*, 1st Dist. Hamilton No. C-830036, 1984 WL 6669, *2 (June 27, 1984), citing *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) and *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (with regard to use of suppressed statements for impeachment purposes). *Accord State v. Myers*, 2d Dist. Darke No. 1643, 2006-Ohio-

1604, ¶ 75, quoting *State v. Hill*, 75 Ohio St.3d 195, 207, 661 N.E.2d 1068 (1996) ("an accused's voluntary statement could be used to impeach even when the statement was taken in violation of the right to have counsel present").

{¶ 31} Because the trial court was not using Moore's suppressed statements for the purpose of assessing his guilt, it did not err by considering those statements as one factor to be used to determine whether Moore's consent to the search of his vehicle was voluntary. His objection to the trial court's conclusion on that basis is not well taken.

{¶ 32} Moore's second assignment of error is overruled.

### Assignment of Error #3 – Consent Void

{¶ 33} In his final assignment of error, Moore argues that his consent to the search of his vehicle was void because it was given after he had invoked his right to counsel. Recognizing that argument to be at odds with our existing precedent in *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, Moore asks us to overturn the *Carver* decision.

{¶ 34} In *Carver*, the defendant claimed that his trial counsel performed deficiently by failing to file a motion to suppress DNA evidence taken from buccal swabs collected with the defendant's consent, but after he had invoked his right to counsel. *Id.* at ¶ 114. Citing *U.S. v. LaGrone*, 43 F.3d 322 (7th Cir. 1993), we stated as follows:

> [E]ven after a suspect has invoked his right to counsel after *Miranda* warnings, the police are not prohibited from asking a suspect to consent to a search. * * * Accordingly, consent given after the invocation of *Miranda* rights is valid as long as it is voluntary. Although physical evidence derived from statements made in violation of *Miranda* is subject to suppression, * * *

physical evidence obtained pursuant to the voluntary consent of the defendant is not.

(Citations omitted.) *Carver* at 114.

**{¶ 35}** We since have reaffirmed that principle in a case more factually similar to Moore's. *See State v. Severt*, 2d Dist. Montgomery No. 24074, 2010-Ohio-5389, ¶ 47 ("a police officer's request to a defendant to search his vehicle does not constitute an interrogation"). We also consistently have recognized that a consent to search does not implicate *Miranda* concerns. *See, e.g., State v. Tobias*, 2d Dist. Montgomery No. 27975, 2000 WL 1299535, *4 (Sept. 15, 2000) ("A consent to search * * * does not implicate the Fifth Amendment rights that Miranda [sic] is designed to protect"); *State v. Lee*, 2d Dist. Greene No. 96 CA 115, 1997 WL 674657, *6 (Oct. 31, 1997) ("*Miranda* warnings * * * have no direct bearing on the decision to consent to a search").

**{¶ 36}** Additionally, the Eighth District Court of Appeals cited our decision in *Carver* in likewise concluding that a defendant's constitutional rights are not violated when police request the defendant's consent to a search after the defendant has invoked his right to counsel, "because the request for consent to search [i]s not an interrogation under *Miranda*." *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 23. Other courts have reached similar conclusions. *See, e.g., State v. Casteel*, 2017-Ohio-8303, 98 N.E.3d 889, ¶ 19 (4th Dist.) ("[t]he weight of authority holds that prior *Miranda* warnings are not required to validate consent searches"); *State v. Rice*, 5th Dist. Licking No. 02-CA-00096, 2003-Ohio-2860, ¶ 15, citing *Lee*. ("*Miranda* warnings have no direct bearing on the issue of consent since consent is not interrogation nor a statement").

**{¶ 37}** Moore's third assignment of error is overruled.

### *Conclusion*

**{¶ 38}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck
Heather N. Jans
John S. Pinard
Hon. Dennis J. Langer